**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS, SPRINGFIELD DIVISION**

| | | |
|---|---|---|
| STEPHANIE LYNN CHESNUT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 19-cv-3005 |
| | ) | |
| ANDREW SAUL, Commissioner | ) | |
| of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## <u>OPINION</u>

TOM SCHANZLE-HASKINS, U.S. MAGISTRATE JUDGE:

Plaintiff Stephanie Lynn Chesnut appeals from the denial of her application for Supplemental Security Income (SSI) under Title XVI of the Social Security Act. 42 U.S.C. §§ 416(i), 1381a and 1382c. This appeal is brought pursuant to 42 U.S.C. §§ 405(g) and 1383(c). Chesnut filed a Motion for Summary Judgment (d/e 12). The Defendant Commissioner filed a Motion for Summary Affirmance (d/e 18). The parties consented to proceed before this Court. <u>Consent to the Jurisdiction by a United States Magistrate Judge and Reference Order entered May 16, 2019 (d/e 10)</u>. For the reasons set forth below, the Commissioner is affirmed.

Chesnut raises three claims of error committed by the Administrative Law Judge (ALJ):

## STATEMENT OF ERRORS

1.    The ALJ erred in failing to develop the record as to Plaintiff's mental health, resulting in an RFC unsupported by substantial evidence.

2.    The ALJ's RFC failed to account for Plaintiff's limitations as to maintaining concentration, persistence and pace, resulting in an RFC unsupported by substantial evidence.

3.    The case was adjudicated by an unconstitutionally-appointed ALJ, and the matter should be remanded for a new hearing with a different ALJ.

Plaintiff's Memorandum of Law in Support of a Motion for Summary Judgment (d/e 13), at 1. The Court discusses the facts relevant to these claims of error.

## STATEMENT OF FACTS

Chesnut was born on March 6, 1974. She secured a GED. She previously worked as a cashier, cashier/checker, nurse assistant, and coin operated laundry attendant. R. 142, 270, 336. She has not worked since she filed her SSI application on March 10, 2015. Chesnut was diagnosed with fibromyalgia, history of scoliosis, obesity, affective disorder, anxiety, and posttraumatic stress disorder (PTSD). R. 95, 120, 270.

On April 7, 2015, Chesnut saw Dr. Dennis R. Caffery, M.D., to establish treatment as a new patient. Chesnut said that she applied for disability because she could not stand or sit for prolonged periods due to

chronic back and leg pain. She also reported headaches, GERD, and restless leg syndrome. On examination, Chesnut was negative for agitation, but was nervous/anxious. Chesnut had a body mass index (BMI) of 36.0-36.9. She had a normal mood and affect. Dr. Caffery assessed fibromyalgia, obesity, restless leg syndrome, edema, and anxiety. He prescribed fluoxetine for anxiety. R. 353-54.

On May 21, 2015, Chesnut saw Dr. Caffery's physician's assistant, Deborah Collins, PA. Chesnut reported that she was a victim of child abuse and grew up with an adoptive parent. She also reported that she lost a child of her own. Collins stated that Chesnut would probably need counseling at some point. On examination, Chesnut was alert and oriented. Her motor and sensory examinations were within normal limits. Collins increased the dosage of fluoxetine. R. 350, 352.

On June 15, 2015, Chesnut saw state agency psychologist Dr. Natalie Pamphile, Psy.D., for a Mental Status Examination. R. 364-68. Chesnut had no indication of psychomotor agitation or retardation. She maintained good eye contact and spoke clearly with good rhythm and rate. Chesnut said that she lived with her fiancé and his mother. She had lived there since December 2014. Before that, she lived with a friend for a year. She said that the longest she lived in one place as an adult was two and

one-half years.  She said she had no family or friends.  Her children were "adopted out" and no longer talked to her.  R. 364.

Chesnut reported to Dr. Pamphile that she had problems falling asleep.  She had nightmares every night and had had night terrors two weeks earlier.  She said she was a victim of childhood abuse and trauma. Her father verbally and physically abused her.  She was taken from her parents at age 4 and was subsequently adopted and then abandoned by her adoptive mother.  She said she spent four years in group homes from age 14 to 18.  R. 364.

On examination, Chesnut was oriented.  Her memory was fair.  She had appropriate thought processes.  She endorsed the presence of auditory and olfactory hallucinations.  Dr. Pamphile concluded:

> Generally speaking, the claimant's cognitive functions appear to be operating within expected developmental limits. The claimant's reported psychological symptoms and behavioral history appear to be commensurate with Major Depressive Disorder, mild and Post-Traumatic Stress Disorder, moderate.

R. 367.  Dr. Pamphile assessed major depressive disorder, mild and PTSD, moderate.  R. 368.

On July 20, 2015, state agency psychologist Dr. M.W. DiFonso, Psy.D., prepared a Psychiatric Review Technique and a Mental Residual Functional Capacity Assessment.  R. 168-71. Dr. DiFonso opined that

Chesnut had an affective disorder and an anxiety related disorder. Dr. DiFonso opined that Chesnut's mental impairments caused mild restrictions in activities of daily living; moderate difficulties in maintaining social functioning; and moderate difficulties in maintaining concentration, persistence, or pace. Dr. DiFonso found no evidence of repeated episodes of decompensation each of extended duration. R. 168. Dr. DiFonso opined that Chesnut was moderately limited in her ability to: understand and remember detailed instructions; carry out detailed instructions; maintain attention and concentration for extended periods; interact appropriately with the general public; and accept instructions and respond appropriately to criticism from supervisors. Dr. DiFonso found no other limitations or restrictions due to Chesnut's mental impairments. R. 170-71. Dr. DiFonso concluded that Chesnut was moderately limited in her ability to carry out detailed tasks, moderately limited in her social expectations, and her adaptive skills were within normal limits. Dr. DiFonso stated:

> [Chesnut] CAPABLE OF SEMI-SKILLED PRODUCTIVE ACTIVITY W MODIFIED SOCIAL DEMAND. These findings complete the medical portion of the disability determination.

R. 158.

On August 20, 2015, state agency psychologist Dr. Joseph Mehr, Ph.D., prepared a Psychiatric Review Technique and a Mental Residual Functional Capacity Assessment. R. 155-58. Dr. Mehr largely agreed with Dr. DiFonso. Dr. Mehr opined that Chesnut had and affective disorder and an anxiety related disorder. Dr. Mehr opined that Chesnut's mental impairments caused mild restrictions in activities of daily living; moderate difficulties in maintaining social functioning; and moderate difficulties in maintaining concentration, persistence, or pace. Dr. Mehr found no evidence of repeated episodes of decompensation each of extended duration. R. 155. Dr. Mehr opined that Chesnut was moderately limited in her ability to: understand and remember detailed instructions; carry out detailed instructions; maintain attention and concentration for extended periods; interact appropriately with the general public; accept instructions and respond appropriately to criticism from supervisors; and get along with coworkers without distracting them or exhibiting behavioral extremes. Dr. Mehr found no other limitations or restrictions due to Chesnut's mental impairments. R. 157-58. Dr. Mehr concluded that Chesnut was moderately limited in her ability to carry out detailed tasks and moderately limited in her social expectations, and her adaptive skills were within normal limits. Dr. Mehr stated:

[Chestnut] CAPABLE OF SEMI-SKILLED PRODUCTIVE ACTIVITY W MODIFIED SOCIAL DEMAND.  These findings complete the medical portion of the disability determination.

R. 158.

On July 7, 2016, Chesnut saw Dr. Caffery.  Chesnut reported severe leg pain.  She reported that the rest of her medication seemed "to be working okay for her."  R. 480. On examination, Chesnut was negative for agitation.  She had a normal mood and affect.  Dr. Caffery added ropinirole and magnesium to her medications at bedtime.  R. 480-82.

On August 12, 2016, Chesnut saw Dr. Caffery for a follow up on her restless leg pain at night.  On examination, Chesnut was oriented and had a normal affect and mood.  R. 490.

On April 4, 2017, Chesnut saw Dr. Caffery for a recheck of her restless leg syndrome and fibromyalgia.  On examination, Chesnut was alert and oriented.  R.505.  Dr. Caffery stopped the ropinirole and Flexeril and prescribed trazodone at nighttime and meloxicam once a day.  R. 506.

On April 21, 2017, Chesnut saw Dr. Caffery for a disability evaluation. In his review of her symptoms, Dr. Caffery stated that Chesnut was negative for dysphoric mood and agitation.  He said she was nervous/anxious.  On examination, Chesnut had normal mood and affect. R. 509.

On April 27, 2017, Chesnut saw Licensed Clinical Professional Counselor Meredith Sary, LCPC, at St. Francis Medical Center in Peoria, Illinois. Chesnut reported depression. She said that she wanted to sleep all the time and eat too much. She reported that she was sad. She missed her children and was afraid she would not see one of her grandchildren. She reported feelings of helplessness, hopelessness, guilt, shame, and worthlessness. She said she was isolated and had no interest in pleasure. R. 448-49.

Chesnut reported a history of significant physical, emotional, and sexual trauma. She said that her birth father sexually abused her. Her birth mother and adoptive mother emotionally abused her. She reported that her adoptive mother adopted her when she was 6 years old and that her adoptive mother gave her up at 14 and left her at a psychiatric hospital. Chesnut reported that she had three admissions to a psychiatric ward as a child in 1989, 1990, and 1991. She last saw her birth parents in 2011. R. 448-50.

Chesnut said she was married once and separated in 2007. She said her husband was abusive. She had five children, with four of them still living. She had no contact with her children. Her boyfriend hit her daughter and the state took her children in 2009. She reported trauma at losing her

children.  She said that she found her "ex" after he committed suicide.[1]

She experienced homelessness and living on the streets.  Sary said

Chesnut did not endorse specific symptoms of posttraumatic stress

syndrome (PTSD).  She reported having nightmares.  Chesnut did not have

suicidal or homicidal ideations.  She showed anxiety and nervousness with

difficulty focusing, worry, uneasiness, and tension.  R. 448-49.

Sary assessed major depression recurrent moderate, and anxiety.

She admitted Chesnut for outpatient counseling for the following reasons:

> Reason for admission:  Patient stated she wants to address her
> traumatic past and let go of her own guilt/shame.  Patient
> discussed her desire to work on building on inner peace.
> Patient discussed her depression and anxiety symptoms that
> she would like decrease.

R. 453.

On June 8, 2017, Chesnut saw Dr. Caffery for bilateral knee pain. R.

476-77.  On examination, Chesnut had normal mood and affect.  Dr.

Caffery diagnosed fibromyalgia, restless leg syndrome, edema, and

anxiety.  R. 476-77.

On June 29, 2017, Chesnut saw counselor Sary for her first

counseling session after her initial assessment.  Chesnut completed a

PTSD inventory and endorsed many PTSD symptoms, including repeated

---

[1] The records do not identify whether the "ex" was her ex-husband or another former significant other.

distressing memories; feeling an event will happen again; feeling intense physical and emotional distress when exposed to reminders of events; avoiding reminders of events; problems concentrating; exaggerated startled response; feeling on guard; poor trust in others; significant guilt/shame; and depression.  Sary added PTSD to Chesnut's diagnosis.  R. 454.  Sary engaged in a counseling session and recommended that Chesnut return in two weeks.  R. 455.

## THE EVIDENTIARY HEARING

On August 17, 2017, the ALJ conducted an evidentiary hearing.  R. 115-47.  Chesnut appeared with her attorney.  Vocational expert Dennis Gustafson also appeared.  R. 117.

Chesnut discussed her pain from fibromyalgia and restless leg syndrome and her medications.  Chesnut testified that she was still taking fluoxetine.  She did not know how effective fluoxetine was.  She said "I'm not even exactly sure what it's for.  I just take it."  R. 128-29.

The ALJ asked Chesnut about her mental impairments.  Chesnut said she had anxiety issues all her life.  She took Ritalin for six years when she was a child.  She was hospitalized as a child in the late 80's and early 90's.  Chesnut said she saw Sary for counseling.  R. 130.

Chesnut said that problems with concentration became an issue in the last few years and she needed reminders to take medications sometimes. She said that she can put something down and immediately forget where she put it. R. 130-31. She recently took her dog out at 4:00, and 10 minutes later she took him out again because she had forgotten that she had already taken him out. R. 131.

Chesnut said certain things could trigger her PSTD,

> Like certain things I see, like with people taking care of their children. We have a neighbor across the street. She cusses at her child and she screams and she hollers and she hits and it brings back memories. It – flashback. It's – it – I can't handle it.

R. 137. She also said that she reacts when certain people remind her of her father. She said that her father was a monster. R. 138. When she is out in public and sees someone that reminds her of her birth mother or father, she ducks or goes back to her van, "because I just can't handle it." R. 138.

The vocational expert Gustafson also testified. The ALJ asked Gustafson the following hypothetical question:

> Q   Mr. Gustafson, I'd like you to consider an individual of the Claimant's age, education, and work experience. For this opening hypothetical, I'd like you to consider an individual, who's limited to medium work. I'd like you to assume this individual should perform no more than frequent climbing, stooping, kneeling, crouching, crawling, balancing, as that term

is defined in the  Dictionary of Occupational Titles.  Due to deficits in memory, concentration, persistence and pace, I would like you to assume that this individual is reasonably limited to performing noncomplex, routine, and repetitive tasks on sustained basis with only routine breaks. I'd like you to assume that any work must not involve more than ordinary or routine changes in the work setting or duties. I'd like you to assume this individual would do best in a setting with reduced social demands, considering that, I'd like you to assume any work should not require more than occasional contact or significant interaction with the general public, and I'd like you to assume that any work should not require more than occasional interaction with co-workers or supervisors.  Would that allow for any past work?

R. 142-43.  Gustafson opined that such a person could not perform

Chesnut's prior relevant work as a cashier / checker.  R. 141-143.

The ALJ modified his hypothetical question:

Q Okay. Thank you. I'd like you to assume light exertional limitations. I'd like you to assume this individual should never climb ladders, ropes or scaffolds. I'd like you to assume this individual can climb ramps and or stairs, stoop, kneel, crouch, crawl, balance, as that term is defined in the Dictionary of Occupational Titles. All those other postural activities, no more than occasionally.  I'd like you to assume this individual should avoid more than frequent reaching, handling, and fingering. In other words, no constant reaching, handling, and fingering. I'd like you to assume this individual should avoid concentrated exposure to temperature extremes and hazards, like unprotected heights or dangerous machinery. All of the nonexertional limitations from the first hypothetical, as well. Are there light jobs that would allow for those nonexertional limitations?

R. 144.  Gustafson opined that such person could perform the

representative light jobs of maids and housekeeping cleaners, with 15,000

such jobs in Illinois and 440,000 nationally; non-machine related manufacturing activities with 9,000 such jobs in Illinois and 160,000 nationally. Gustafson said that examples of these manufacturing activities included assembler, light hand packaging, and bottle line attendant. R. 144-45. Gustafson opined that the person could also perform the sedentary jobs of product related inspection work, with 300 such jobs in Illinois and 7,000 nationally; shadow graph scale operator with 1,100 such jobs in Illinois and 18,000 nationally; and hand packaging jobs with 900 such jobs in Illinois and 12,500 nationally. R. 145.

Gustafson opined that a person could not maintain employment and be off work more than 2 days a month. Gustafson said that a person could not maintain employment if the person was off-task 20 percent of the time at work. R. 145. The hearing then concluded.

<u>THE DECISION OF THE ALJ</u>

The ALJ issued his decision on February 2, 2018. The ALJ followed the five-step analysis set forth in Social Security Administration Regulations (Analysis). 20 C.F.R. §§ 404.1520, 416.920. Step 1 requires that the claimant not be currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). If true, Step 2 requires the claimant to have a severe impairment. 20 C.F.R. §§ 404.1520(c), 416.920(c). If true, Step 3

requires a determination of whether the claimant is so severely impaired that she is disabled regardless of her age, education and work experience. 20 C.F.R. §§ 404.1520(d), 416.920(d).  To meet this requirement at Step 3, the claimant's condition must meet or be equal to the criteria of one of the impairments specified in 20 C.F.R. Part 404 Subpart P, Appendix 1 (Listing).  20 C.F.R. §§ 404.1520(d), 416.920(d).  If the claimant is not so severely impaired, the ALJ proceeds to Step 4 of the Analysis.

Step 4 requires the claimant not to be able to return to her prior work considering her age, education, work experience, and Residual Functional Capacity (RFC).  20 C.F.R. §§ 404.1520(e) and (f), 416.920(e) and (f).  If the claimant cannot return to her prior work, then Step 5 requires a determination of whether the claimant is disabled considering her RFC, age, education, and past work experience.  20 C.F.R. §§ 404.1520(g), 404.1560(c), 416.920(g), 416.960(c).  The claimant has the burden of presenting evidence and proving the issues on the first four steps.  The Commissioner has the burden on the last step; the Commissioner must show that, considering the listed factors, the claimant can perform some type of gainful employment that exists in the national economy.  20 C.F.R. §§ 404.1512, 404.1560(c); Weatherbee v. Astrue, 649 F.3d 565, 569 (7th

Cir. 2011); Briscoe ex rel. Taylor v. Barnhart, 425 F.3d 345, 352 (7th Cir. 2005).

The ALJ found that Chesnut met her burden at Steps 1 and 2. Chesnut had not engaged in substantial gainful activity since she applied for SSI and she suffered from the severe impairments of fibromyalgia, history of scoliosis, obesity, affective disorder, and anxiety.  R. 95.  The ALJ decided at Step 3 that Chesnut's impairments or combination of impairments did not meet or equal a Listing. R. 97.

At Step 4, the ALJ found that Chesnut had the following RFC:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 416.967(c) with the following non-exertional limitations.  She can climb, stoop, kneel, crouch and/or crawl no more than occasionally.  Due to deficits in memory, concentration, persistence and pace, she is limited to performing non-complex, routine and repetitive tasks on a sustained basis with only routine breaks.  Any work must not involve more than ordinary or routine changes in work setting or duties.  She will do best in a setting with reduced social demands and considering this, any work should not require more than occasional contact or significant interaction with the general public and no more than occasional interaction with supervisors or coworkers.

R. 99.

The ALJ explained the basis for the portions of the RFC related to Chesnut's mental impairments as follows:

Mentally, the undersigned has considered the claimant's history of depression, anxiety and PTSD. She reports a history of abuse as a child and a psychological consultative examiner diagnosed major depression and post-traumatic stress disorder in June 2015. Despite these allegations, the claimant has only recently sought specialized mental health treatment, when she was seen by a social worker at OSF Behavioral Health on two occasions in April and June 2017. Furthermore, the longitudinal medical evidence, does not reveal significant findings during mental status examinations. Consulting psychologist Dr. Pamphile noted the clamant to be fully oriented with fair memory and appropriate thought processes, although the claimant alleged hallucinations. Cognitive functioning was as expected. When seen by Dr. Caffery initially in April 2015, she was prescribed Fluoxetine for depression and anxiety symptoms, and reported improvement in symptoms. Office notes from Dr. Caffery in 2016 and 2017, demonstrate a normal mood and affect and no changes in her Fluoxetine dosage. Records from her treating counselor, reveal only two appointments in 2017. Mental status examinations revealed a congruent mood and affect with normal orientation. She had average intelligence and normal attention and memory with no hallucinations and coherent thought processes. Insight and judgment were fair.

The undersigned has accommodated any mental functional limitations, by limiting her non-complex, routine and repetitive tasks on a sustained basis with only routine breaks, with no more than ordinary or routine changes in work setting or duties. Due to her anxiety and history of PTSD, she will do best in a setting with reduced social demands and considering this, any work should not require more than occasional contact or significant interaction with the general public and no more than occasional interaction with supervisors or coworkers.

R. 102 (internal citations to the Social Security administrative records

omitted). The ALJ also considered the opinions of Drs. DiFonso and Mehr.

The ALJ stated that Drs. DiFonso and Mehr noted some mental functional

limitations due to anxiety.  The ALJ said that Drs. DiFonso and Mehr did not have the benefit of seeing all the medical records.  The ALJ indicated that the RFC was based on a review of all the records and gave Chesnut "all benefit of reasonable doubt."  R. 103.

The ALJ concluded at Step 4 that Chesnut could not perform her past relevant work.  At Step 5, the ALJ determined that Chesnut could perform a significant number of jobs in the national economy.  The ALJ relied on the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2, and the opinions of vocational expert Gustafson that a person with Chesnut's age, education, work experience, and RFC could perform various light and sedentary jobs, including packager with 11,000 jobs in Illinois and 160,000 nationally.  The ALJ concluded that Chesnut was not disabled.

Chesnut appealed the decision.  On November 14, 2018, the Appeals Council denied her request for review.   The decision of the ALJ then became the final decision of the Defendant Commissioner.  R. 1.  During the proceedings before the ALJ, Chesnut and her attorney did not challenge the authority of the ALJ to conduct the hearing and issue a decision in this case.

This Court reviews the Decision of the Commissioner to determine whether it is supported by substantial evidence. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate" to support the decision. Richardson v. Perales, 402 U.S. 389, 401 (1971). This Court must accept the findings if they are supported by substantial evidence and may not substitute its judgment or reweigh the evidence. Jens v. Barnhart, 347 F.3d 209, 212 (7th Cir. 2003); Delgado v. Bowen, 782 F.2d 79, 82 (7th Cir. 1986). This Court will not review the ALJ's evaluation of statements regarding the intensity, persistence, and limiting effect of symptoms unless the evaluation is patently wrong and lacks any explanation or support in the record. See Pepper v. Colvin, 712 F.3d 351, 367 (7th Cir. 2014); Elder v. Astrue, 529 F.3d 408, 413-14 (7th Cir. 2008); SSR 16-3p, 2016 WL 1119029, at *1 (2016) (The Social Security Administration no longer uses the term credibility in the evaluation of statements regarding symptoms). The ALJ must articulate at least minimally her analysis of all relevant evidence. Herron v. Shalala, 19 F.3d 329, 333 (7th Cir. 1994). The ALJ must "build an accurate and logical bridge from the evidence to his conclusion." Clifford v. Apfel, 227 F.3d 863, 872 (7th Cir. 2000).

As noted above, Chesnut raised three issues on appeal:

1.      The ALJ erred in failing to develop the record as to Plaintiff's mental health, resulting in an RFC unsupported by substantial evidence.

2.      The ALJ's RFC failed to account for Plaintiff's limitations as to maintaining concentration, persistence and pace, resulting in an RFC unsupported by substantial evidence.

3.      The case was adjudicated by an unconstitutionally-appointed ALJ, and the matter should be remanded for a new hearing with a different ALJ.

<u>Plaintiff's Memorandum of Law in Support of a Motion for Summary Judgment (d/e 13)</u>, at 1.  Chesnut forfeited any other issue she might have raised.  Chestnut attempts to raise in her Reply brief (d/e 20) a challenge to the ALJ's analysis of whether her impairments met a Listing at Step 3 of the ALJ's decision.  While Chestnut raised the three issues noted above in her Memorandum of Law in Support of Motion for Summary Judgment (d/e 13) at 1, the issue regarding the ALJ's failure to articulate a specific denial of Chestnut's entitlement to meet a Listing at Step 3 of the 5-step analysis was <u>not</u> raised in Chestnut's Motion for Summary Judgment.  The issue was raised for the first time in Chestnut's Reply brief. See Plaintiff's Reply to Defendant's Memorandum (d/e 20) at 3-5.  An issue raised for the first time in a reply brief is forfeited.  <u>See</u> <u>Narducci v. Moore</u>, 572 F.3d 313, 324 (7th Cir. 2009)  Additionally, Chestnut's Reply does not suggest any Listing

which Chestnut met at Step 3.  Failure to discuss a Listing to which

Chestnut may be entitled also waives the issue.  The issue regarding a

Step 3 Listing raised by Chestnut is so underdeveloped that it is also

waived on that basis.  <u>Frazee v. Berryhill</u>, 733 F.3d Appx. 831, 834 (7th Cir.

2018)

The Court addresses its analysis to the issues properly raised on

appeal.  The Court sees no reversible error in any of the issues raised.

<u>Issue No. 1 on Appeal</u>

1.      The ALJ erred in failing to develop the record as to
Plaintiff's mental health, resulting in an RFC unsupported by
substantial evidence.

The ALJ is required to fully develop the record.  The determination of

the completeness of the record, however, is a matter for the reasoned

judgment of the ALJ and the Court defers to the ALJ's determination,

absent a showing that the ALJ abused his discretion. <u>See</u> <u>Nelms v. Astrue</u>,

553 F.3d 1093, 1098 (7th Cir. 2009);  <u>Wilcox v. Astrue</u>, 492 Fed. Appx 674,

678 (7th Cir. 2012).  In this case, Chestnut submitted her mental health

treatment records.  Her primary care physician Dr. Caffery prescribed an

antidepressant fluoxetine.  He also assessed her mental state at her

appointments.  Chestnut also submitted the records of her sessions with her

counselor Sary.  The ALJ also considered a consultative examination by

Dr. Pamphile and the expert assessments by Drs. DiFonso and Mehr.  The ALJ had a basis in the record on which to evaluate Chesnut's functional limitations based on her mental impairments.  The Court sees no abuse of discretion in relying on this record.

Moreover, Chesnut was represented by counsel.  When a person is represented by counsel, the person is presumed to have made her best case before the ALJ.  <u>Skinner v. Astrue</u>, 478 F.3d 836, 842 (7th Cir. 2007).  If Chesnut's counsel believed that more evidence on her mental condition was necessary, he could have secured additional evidence or he could have asked the ALJ to secure additional medical evidence.  He did neither.

Chesnut argues that it is error to rely on the opinions of reviewing, non-examining medical sources such as Drs. DiFonso and Mehr in formulating an RFC.  Reviewing psychologists, such as Drs. DiFonso and Mehr, "are highly qualified . . . psychologists who are experts in the evaluation of the medical issues in disability claims under the Act."  20 C.F.R. § 404.1527(f)(2)(i).  An ALJ may rely on their opinions in determining eligibility for disability benefits.  <u>Scheck v. Barnhart</u>, 357 F.3d 697, 700 (7th Cir. 2004); <u>Johansen v. Barnhart</u>, 314 F.3d 283, 288-89 (7th Cir. 2002); <u>Scott v. Sullivan</u>, 898 F.2d 519, 524 (7th Cir. 1990).  Chesnut relies on persuasive authority from outside this Circuit to support the

proposition that an ALJ may not rely on the opinions of reviewing physicians and psychologists. The Court will follow the controlling authority of the Seventh Circuit set forth in <u>Scheck</u>, <u>Johansen</u>, and <u>Scott</u>. The ALJ did not err in relying on the opinions of Drs. DiFonso and Mehr. He did not abuse his discretion in deciding not to seek additional medical evidence on Chesnut's mental impairments, particularly in light of the fact that Chesnut's attorney chose not to raise the issue before the ALJ. There was no error.

<u>Issue No. 2 On Appeal</u>

> 2.    The ALJ's RFC failed to account for Plaintiff's limitations as to maintaining concentration, persistence and pace, resulting in an RFC unsupported by substantial evidence.

The ALJ properly accounted for Chesnut's limitation on maintaining concentration, persistence, or pace in the RFC. Drs. DiFonso and Mehr opined that Chesnut had moderate limitations in maintaining concentration, persistence, or pace. R. 155, 168. Drs. DiFonso and Mehr both also opined that, even with that moderate functional limitation, Chesnut could perform semi-skilled work with modified social demands. The ALJ relied on those opinions, and other evidence presented, and determined that Chesnut had an RFC that was more limited to routine repetitive tasks:

> Due to deficits in memory, concentration, persistence and pace, she is limited to performing non-complex, routine and repetitive tasks on a sustained basis with only routine breaks. Any work

must not involve more than ordinary or routine changes in work
setting or duties.

R. 99.  The ALJ also addressed Drs. DiFonso and Mehr's opinion that

Chesnut needed to work with modified social demands:

> She will do best in a setting with reduced social demands and
> considering this, any work should not require more than
> occasional contact or significant interaction with the general
> public and no more than occasional interaction with supervisors
> or coworkers.

R. 99.  The ALJ considered the findings that Chesnut was moderately

limited in maintaining concentration, persistence, or pace.  The RFC limited

Chesnut to a range of work well within the range of work that Drs. DiFonso

and Mehr found her capable of even with her functional limitations due her

mental impairments.  The ALJ properly "tied the record evidence to the

limitations included in the RFC finding."  Jozefyk v. Berryhill, 923 F.3d 492,

498 (7th Cir. 2019).  There was no error.

Chesnut relies on cases in which the medical and psychological

experts provided no guidance to the ALJ on the functional limitations that

should be incorporated into an RFC when a person had a limitation on

maintaining concentration, persistence, or pace.  See Varga v. Colvin, 794

F.3d 809, 813 (7th Cir. 2015); Yurt v. Colvin, 758 F.3d 850, 859 (7th Cir.

2015); O'Connor-Spinner v. Astrue, 627 F.3d 614, 620 (7th Cir. 2010).

Those cases do not apply here because Drs. DiFonso and Mehr provided

expert psychological guidance on the issue.  DiFonso and Mehr opined

that, considering all of Chestnut's mental limitations, she could perform

semi-skilled work with modified social demands.  The ALJ may rely on the

reviewing physicians' opinion that "translated" the list of limitations (such as

limitations on concentration, persistence, or pace) into a narrative

description of "specific RFC assessment" of the types of work that Chesnut

could perform.  See Johansen, 314 F.3d 283, 288-89 (7th Cir. 2002); see

Dudley v. Berryhill, 773 Fed. Appx. 838, 843 (7th Cir. 2019).  Drs. DiFonso

and Mehr provided a "specific RFC assessment." The ALJ properly "tied

the record evidence," including the opinions of Drs. DiFonso and Mehr, to

the RFC determination by formulating an RFC that was even less

demanding than the functional limitations set forth in the opinions of Drs.

DiFonso and Mehr.  Jozefyk, 923 F.3d at 498.  There was no error.

Issue No. 3 On Appeal

> 3.    The case was adjudicated by an unconstitutionally-
> appointed ALJ, and the matter should be remanded for a new
> hearing with a different ALJ.

Chesnut's counsel chose not to raise before the ALJ a challenge to

the constitutionality of the ALJ's appointment.  Chesnut, thereby, waived

this issue. Marylin R. v. Saul, 2019 WL 4389052, at *3-*5 (C.D. Ill.

September 13, 2019).  The Court is convinced by the thorough analysis in

the <u>Marylin R.</u> opinion that an objection to the ALJ's appointment is waived if not raised before the ALJ. Chesnut's arguments to the contrary are not persuasive. The issue is waived and is not a basis for reversal on judicial review.

THEREFORE, IT IS OREDERED that Defendant Commissioner of Social Security's Motion for Summary Affirmance (d/e 18) is ALLOWED; Plaintiff Stephanie Chesnut's Motion for Summary Judgment (d/e 12) is DENIED; and the decision of the defendant Commissioner is AFFIRMED. THIS CASE IS CLOSED.

ENTER: February 21, 2020


s/ *Tom Schanzle-Haskins*

TOM SCHANZLE-HASKINS
UNITED STATES MAGISTRATE JUDGE